FILED

2016 JAN -4 PM 12: 52

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *EX REL.*, ) <br> LEONARD ANTHONY SETTLES II, and ) <br> LEONARD ANTHONY SETTLES II ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNIVERSAL HEALTH SERVICES, INC., ) <br> PREMIER BEHAVIORAL SOLUTIONS, INC., ) <br> TBJ BEHAVIORAL CENTER, LLC, all d/b/a ) <br> RIVER POINT BEHAVIORAL HEALTH, ) <br> HENRY LEPELY, M.D., ) <br> PAUL FERRIS RASHID, M.D., ) <br> ROXANNE CHARBONEAU, ) <br> JOHN DOES 1-5, and ) <br> JANE DOES 1-5, ) <br> ) <br> Defendants. ) <br> _____ ) | CIVIL ACTION NO: 3:16-cv-1-J-32JRK <br> JURY TRIAL DEMANDED <br> FILED UNDER SEAL |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiffs, the United States of America *ex rel.* Leonard Anthony Settles, II (the "Relator"), and Leonard Anthony Settles, II, by and through his counsel of record, and files this Complaint and Demand For Jury Trial under seal. In further support of this cause of action, Plaintiffs would state and allege as follows:

### JURISDICTION AND VENUE

1.   This is an action to recover damages and civil penalties on behalf of the United States of America arising from false statements and ineligible claims made and presented by the Defendants and/or its agents and employees in violation of the False Claims

Act, 31 U.S.C. §§ 3729, *et seq.*, as amended, and to recover damages on behalf of Leonard Anthony Settles II arising from the Defendants falsely imprisoning and depriving him of Constitutional and statutory rights in violation of 42 U.S.C. § 1983, and violation of the Florida Civil Remedies For Criminal Practices Act, Florida Statutes § 772.103, (hereinafter "FCRCPA").

2. This court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a), 28 U.S.C. § 1345, and 28 U.S.C. § 1331.

3. This court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) in that Defendants do or transact business in this jurisdiction and the violations of the False Claims Act described herein were carried out in this district.

4. Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff/Relator Leonard Anthony Settles II is a resident of Virginia and was a patient of River Point Behavioral Health in August 2015. Leonard Anthony Settles II brings this action for violations of 31 U.S.C. §§ 3729 *et. seq.* on behalf the United States Government and himself. Leonard Anthony Settles II alleges that he has direct and independent knowledge of the allegations contained herein (unless otherwise specified) and is therefore an "original source" as defined under the False Claims Act.

6. Defendant Universal Health Services, Inc. ("UHS") is a Delaware corporation with its headquarters at 367 S. Gulph Road, King of Prussia, Pennsylvania 19406. UHS subsidiaries own and operate more than 235 acute care and behavioral health facilities and

surgery centers in 37 states, the District of Columbia, Puerto Rico, the U.S. Virgin Islands and the United Kingdom.

7. Defendant Premier Behavioral Solutions, Inc. ("Premier") is a Delaware corporation with its headquarters at 367 S. Gulph Road, King of Prussia, Pennsylvania 19406.

8. Defendant TBJ Behavioral Center, LLC ("TBJ") is a Delaware limited liability company with its principal place of business at 6300 Beach Boulevard, Jacksonville, Duval County, Florida.

9. Defendant River Point Behavioral Health ("River Point") is a 93-bed residential mental health treatment facility located at 6300 Beach Boulevard, Jacksonville, Duval County, Florida. River Point is a receiving facility designated by the Florida Department of Children and Families pursuant to Florida Statutes § 394.461 (2015).

10. Premier Behavioral Solutions, Inc., TBJ Behavioral Center, LLC, and River Point Behavioral Health are subsidiaries of Universal Health Services, Inc., and affiliates of each other. Unless otherwise denoted, these four defendants shall be collectively referred to as "UHS Defendants."

11. Defendant Henry Lepely, M.D. (hereinafter "Lepely") was employed by or an agent of Defendant UHS in the capacity of a physician at River Point.

12. Defendant Paul Ferris Rashid, M.D. (hereinafter "Rashid) was employed by or an agent of Defendant UHS in the capacity of a physician at River Point Behavioral Health.

13. Defendant Roxanne Charboneau (hereinafter "Charboneau") was employed by or an agent of Defendant UHS at River Point Behavioral Health.

14. Defendants John Doe 1-5 were employees or agents of Defendant UHS.

15. Defendants Jane Doe 1-5 were employees or agents of Defendant UHS.

## FACTUAL ALLEGATIONS

**I.  Federal Health Care Programs**

16. The TRICARE program is a health care benefit program under 18 U.S.C. §24(b). TRICARE provides insurance to eligible beneficiaries, to include members of the Uniformed Services, family members, spouses and children of active duty uniformed service personnel, retirees and their spouse and dependent children, and spouses and children of deceased retired Uniformed Service personnel.

17. To receive reimbursement for a covered service from a health care benefit program, a medical provider is required to submit a claim, either electronically or in hard copy. The claim has to be made on a form known as a Health Insurance Claim Form or "HCFA-1500."

18. The HCFA-1500 includes information identifying the medical provider, the rendering physician, the patient, and the services rendered. By submitting the claim, the provider certifies, among other things, that the services were rendered to the patient and were medically necessary.

19. Provider claims also include billing codes, or Current Procedural Terminology ("CPT") codes, which were numbers that referred to specific descriptions of medical services provided to beneficiaries.

20. Once a provider submits an HCFA-1500 regarding a particular patient or reimbursement claim, and once that claim has been approved for reimbursement, TRICARE

4

reimburses the provider. The provider typically receives payment by electronic deposit or a mailed reimbursement check.

## II. Scheme To Defraud and Racketeering Activity

21. The False Claims Act provides that any person who knowingly submits or causes to be submitted a false, fraudulent or ineligible claim to the Government for payment or approval is liable for a civil penalty of up to $11,000.00 for each such claim submitted or paid, plus three times the amount of the damages sustained by the Government. Liability attaches both when a defendant knowingly seeks payment that is unwarranted from the Government and when false records or statements are knowingly created or caused to be used to conceal, avoid or decrease an obligation to pay or transmit money to the Government.

22. The False Claims Act allows for any person having information regarding a false or fraudulent claim against the Government to bring an action for himself/herself (a "Relator") and for the Government, and to share in any recovery. The Complaint is filed under seal for sixty (60) days (without service on the defendant during that period) to enable the Government: (a) to conduct its own investigation without the defendant's knowledge, and (b) to determine whether to join the action.

23. Universal Health Services, Inc. is one of the largest owners of mental health facilities in the United States.

24. With few exceptions, Defendant UHS restricts admissions to River Point Behavioral Health to people who qualify for reimbursement of their medical costs from private insurance, the Veterans Administration, TRICARE, or another federally funded healthcare program.

25. As part of the racketeering activity, the Defendants implement a scheme of holding patients with healthcare coverage through the Veterans Administration, TRICARE, and other federally funded healthcare programs, without medical justification or longer than medically necessary under the guise of the Florida Mental Health Act, Florida Statutes §§ 394.451-394.47891 (2015). (hereinafter the "Baker Act").

26. The Defendants implement a systematic census to determine when patients' federal benefits will expire.

27. As part of the racketeering activity, the Defendants maintain discharge lists of patients whose insurance have run out and encourages its behavioral health facilities to discharge these patients regardless of their condition.

28. As part of the racketeering activity, the Defendants discharge patients that they are illegally detaining under the guise of the Baker Act, when the patient obtains legal representation, all to avoid the scrutiny of Florida's state courts.

29. As part of the racketeering activity, the Defendants target patients that they believe cannot advocate for themselves, lack a familial support system that can advocate for them, or lack self-awareness and the propensity to scrutinize medical providers.

30. On or about August 7, 2015, at approximately 3:00 a.m., Leonard Anthony Settles II's girlfriend called the Jacksonville Sheriff's Office (hereinafter "JSO") from Virginia to report that he was having a panic attack.

31. On or about August 7, 2015, at approximately 3:15 a.m., Leonard Anthony Settles II was detained by JSO patrolmen at his mother's home in Duval County, Florida.

32. During this detainment, the JSO patrolmen questioned Leonard Anthony Settles II as to whether he was suicidal and he stated that he was not.

33. Nonetheless, the JSO patrolmen transferred Leonard Anthony Settles II to Defendant River Point on or about August 7, 2015, at approximately 3:25 a.m., where he was taken into custody and confined against his will for the purposes of involuntary examination pursuant to Florida Statute § 394.463 (2015).

34. The Baker Act allows that a person may be involuntarily examined for up to 72 hours for persons who have a mental illness, are unable or unwilling to consent to voluntary examination, and, as a result of the mental illness, pose a risk of serious bodily harm to themselves or others in the near future.

35. At the time Leonard Anthony Settles II arrived at River Point Behavioral Health, he did not meet the criteria for involuntary placement but was nonetheless detained by the Defendants under the guise of the Baker Act.

36. While involuntarily confined at River Point Behavioral Health, Leonard Anthony Settles II was under the care and treatment of Defendant Lepely and Defendant Rashid.

37. Defendant Lepely's "examination" of Leonard Anthony Settles II on August 7, 2015 lasted for 5-7 minutes.

38. Through their employment by Defendant UHS, Defendant Lepely, Defendant Rashid, Defendants John Doe 1-5, and Defendants Jane Doe 1-5 were acting under color of state law, to wit the Baker Act, in involuntarily confining Leonard Anthony Settles II at River Point Behavioral Health.

39. Defendants acted under color of state law by involuntarily confining Leonard Anthony Settles II in a designated Baker Act receiving facility.

40. Leonard Anthony Settles II was not, during the time of his involuntary confinement, dangerous to himself or others and the Defendants had no basis upon which to continue Leonard Anthony Settles II's involuntary confinement in River Point Behavioral Health.

41. Leonard Anthony Settles II had not been charged with a crime at the time of his involuntary confinement, nor at any time during his involuntary confinement.

42. Following an initial examination, Leonard Anthony Settles II should have been released.

43. During his involuntary confinement, Leonard Anthony Settles II was present at a group therapy session during which an employee of the UHS Defendants, with the first name of "Lionel" stated that "TRICARE patients are our favorite patients."

44. On August 9, 2015, the law firm of Justin Seth Drach, P.A. filed an Emergency Petition For Writ of Habeas Corpus With Supporting Memorandum of Law, Duval County Circuit Court case number 16-2015-CA-005125-XXXX-MA.

45. During his confinement, Defendants attempted to thwart communication between Leonard Anthony Settles II and his attorneys, all for the purposes of keeping him longer, to bill TRICARE more.

46. On August 10, 2015, at the end of the 72 hour examination period, Defendant Charboneau filed a Petition for Involuntary Inpatient Admission, Duval County Circuit Court case number 16-2015-MH-001147-XXXX-MA.

47. On August 10, 2015, the same day that the Petition for Involuntary Inpatient Admission was filed, Defendants Lepely, Charboneau, and the UHS Defendants released Leonard Anthony Settles II from River Point Behavioral Health.

48. Leonard Anthony Settles II was released because he did not meet the criteria for involuntary placement and because Plaintiff's attorney advised Defendant Charboneau that the Defendants were committing fraud.

49. Defendant Charboneau did not deny the allegations of TRICARE fraud when confronted by Leonard Anthony Settles II's counsel.

50. Leonard Anthony Settles II was involuntarily confined until 5:20p.m. on August 10, 2015.

51. As part of the racketeering activity, Defendants unlawfully involuntarily confined Leonard Anthony Settles II for the purposes of making and submitting a false or fraudulent claim(s) or HCFA-1500(s) to TRICARE.

52. Defendants submitted false or fraudulent claim(s) or HCFA-1500(s) to TRICARE to seek reimbursement for the time that Leonard Anthony Settles II was involuntarily confined at Defendant River Point Behavioral Health and for medically unnecessary services.

53. The violations of the False Claims Act involve claims for reimbursement that Defendants made against TRICARE and all other federally funded healthcare programs since at least 2010, which Defendants knew were false, exaggerated and/or ineligible. In violation of their duty to report known errors resulting in ineligible federal payments, Defendants

likewise concealed such errors from Government agents in order to keep funds to which they were not entitled.

54.     Based on those provisions, Relator seeks to recover damages and civil penalties arising from Defendants' presentation of false records, claims, and statements to the United States Government and its respective agents in connection with Defendant's claims for reimbursement for medical services provided to patients under the TRICARE and all other federally funded healthcare programs. Relator also seek to recover damages arising from Defendants' unlawful practice of permitting records that Defendants have discovered, learned and knew contained erroneous or ineligible information to be relied upon by the Government as the basis upon which to pay Defendant's unqualified and prohibited reimbursement from federal funds.

55.     All conditions precedent to this action have occurred or have been waived.

### COUNT I
### FALSE CLAIMS SUBMITTED
### FOR UPCODED SERVICES PROVIDED

56.     Relator re-alleges and incorporates by reference the allegations made in paragraphs 1 through 55 of this Complaint.

57.     This is a claim for treble damages and forfeitures under the False Claim Act, 31 U.S.C. §§ 3729-32 as amended.

58.     Through the acts described above, all of which violate the terms of TRICARE and the other federally funded healthcare programs, Defendants and their agents, employers, and employees knowingly presented, caused to be presented, and conspired separately and individually to submit to the United States Government numerous false, fraudulent, and

ineligible claims in order to obtain payment or approval for behavioral health services, in violation of the False Claims Act, 31 U.S.C. §3729(a)(1)(A) and (C).

59.     Through the acts described above and otherwise, Defendants and their agents, employers, and employees, knowingly made, used and/or caused to be made, used and conspired separately and individually to use false records or statements and implied certifications of compliance with applicable laws material to numerous false or fraudulent claims, in violation of the False Claims Act, 31 U.S.C. §3729(a)(1)(B) and (C).

60.     Through the acts described above and otherwise, Defendants and their agents, employers, and employees knowingly made, used, caused to be made, and conspired separately and individually to make false records, certifications, and statements to conceal, avoid and/or decrease Defendants' obligation to repay money to the United States Government that the Defendants improperly and/or fraudulently received, and also failed to disclose to the Government material facts that would have resulted in substantial repayment by them to the federal government, in violation of the False Claims Act, 31 U.S.C. §3729(a)(1)(C), (D), and (G).

61.     The United States, unaware of the falsity or ineligibility of the records, statements and claims made, caused to be made or submitted by Defendants and its agents and employees paid and continue to pay Defendants for claims that would not be paid if the truth were known.

62.     The United States, unaware of the falsity of the records, statements, and claims made, caused to be made or submitted by Defendants, has not recovered TRICARE funds that would have been recovered otherwise.

63. The Defendants upcoded treatment by submitting multiple false or fraudulent claims or HCFA-1500 forms to TRICARE.

64. The Defendants upcoded treatment by submitting multiple false or fraudulent claims or HCFA-1500 forms to other federally funded healthcare programs.

65. The United States has suffered substantial monetary damages because of the Defendants' false claims, certifications, and their omissions.

66. The United States is entitled to treble damages based upon the amount of damage sustained by the United States as a result of the aforementioned violations of the False Claims Act, 31 U.S.C. §§3729-3733, in an amount that will be proven at trial.

67. The United States is entitled to a civil penalty of between $5,500 and $11,000 as required by 31 U.S.C. §3729(a) for each of the fraudulent claims.

68. Relator is also entitled to reasonable attorney's fees and costs, pursuant to 31 U.S.C. §3730(d)(1).

WHEREFORE, Relator Leonard Anthony Settles II prays for judgment:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States a civil penalty of $11,000 for each of the false claims and statements;

(c) awarding Relator 30% of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(d) awarding Relator their litigation costs and reasonable attorney's fees; and

(e) granting such other relief as the Court may deem just and proper.

## COUNT II

## FALSE IMPRISONMENT

69. Leonard Anthony Settles II realleges those allegations contained within paragraphs 1-55 above and incorporates them herein by this reference.

70. Defendants intentionally caused Leonard Anthony Settles II to be restrained against his will.

71. Defendants acted without legal authority in restraining Leonard Anthony Settles II against his will because Leonard Anthony Settles II did not meet the criteria for involuntary examination under the Baker Act.

72. Leonard Anthony Settles II's restraint was unreasonable and unwarranted under the circumstances.

73. Leonard Anthony Settles II suffered mental anguish, humiliation, and loss of income, due to his false imprisonment.

WHEREFORE, Leonard Anthony Settles II prays for judgment:

(a) awarding damages for mental anguish, humiliation, loss of income; and

(b) granting such other relief as the Court may deem just and proper.

## COUNT III

## DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

74. Leonard Anthony Settles II realleges those allegations contained within paragraphs 1-55 and 70-73 above and incorporates them herein by this reference.

75. 42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects any

citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

76. Florida Statutes § 392.463(2)(f) provides for an examination period of no more than 72 hours.

77. Florida Statutes § 392.463(2)(i) states that:

Within the 72-hour examination period . . . one of the following actions must be taken, based on the individual needs of the patient:
1. The patient shall be released, unless he or she is charged with a crime. . .;
2. The patient shall be released, subject to the provisions of subparagraph 1., for voluntary outpatient treatment;
3. The patient, unless he or she is charged with a crime, shall be asked to give express and informed consent to placement as a voluntary patient. . . ; or
4. A petition for involuntary placement shall bed filed in the circuit court when outpatient or inpatient treatment is deemed necessary.

78. Defendants deprived Leonard Anthony Settles II of his Constitutional rights to liberty, to be free from unreasonable searches and seizures, and right to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

79. Leonard Anthony Settles II had a clearly established right to due process before being deprived of his liberty.

80. Leonard Anthony Settles II was not, during the time of his involuntary confinement, dangerous to himself or others and Defendants had no legal basis upon which to continue Plaintiff's involuntary confinement.

81. Leonard Anthony Settles II had not been charged with a crime at the time of his involuntary confinement, nor at any time during his involuntary confinement.

82. Following his initial examination, Leonard Anthony Settles II should have been released pursuant to Florida Statutes § 392.463(2)(i)(1) because he did not meet the clinical requirements for involuntary confinement.

83. Leonard Anthony Settles II suffered mental anguish, humiliation, and loss of income due to his deprivation of liberty and due process under the law.

WHEREFORE, Leonard Anthony Settles II prays for judgment:

(a) awarding damages for mental anguish, humiliation, loss of income;

(b) awarding litigation costs and reasonable attorney's fees pursuant to 42. U.S.C. §1981; and

(c) granting such other relief as the Court may deem just and proper.

## COUNT IV

## VIOLATION OF THE FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT, SECTION 772.103, FLORIDA STATUTES

84. Plaintiff realleges those allegations contained within paragraphs 1-55, 57-68, 70-73, and 75-83 above and incorporates them herein by this reference.

85. As part of the racketeering activity, Defendants participated in the scheme to defraud TRICARE of payments that they were not entitled to, and provided material support to Defendant UHS so that they would receive money for personal use and to fraudulently maximize stockholder equity.

86. As part of the racketeering activity, Defendants with criminal intent received proceeds derived, directly and indirectly, from their ongoing scheme to defraud TRICARE, the other federal healthcare programs, and collection of fraudulent TRICARE reimbursements, both directly and indirectly, and any part of such proceeds, or the proceeds

derived from the investment or use thereof, were used in the establishment or operation of the UHS Defendants' enterprise, in violation of Florida Statute 772.103(1).

87. As part of the racketeering activity, Defendants through their ongoing scheme to defraud TRICARE, the other federal health care programs, and collection of fraudulent TRICARE reimbursements, acquired or maintained, directly or indirectly, an interest in or control of the UHS Defendants' enterprise, in violation of Florida Statute 772.103(2).

88. As part of the racketeering activity, Defendants were employed by, or associated with, the UHS Defendants to conduct or participate, directly or indirectly, in the UHS Defendants' ongoing scheme to defraud TRICARE, the other federal health care programs, and collection of fraudulent TRICARE reimbursements, in violation of Florida Statute 772.103(3).

89. Defendants conspired or endeavored to violate Florida Statute 772.103(1)-(3), in violation of Florida Statute 772.103(4).

90. As part of the racketeering activity, Leonard Anthony Settles II was held illegally and for the purposes of committing fraud upon the United States Government.

91. Leonard Anthony Settles II suffered mental anguish, humiliation, and loss of income due to his deprivation of liberty, search and seizure, and deprivation of due process under the law while Defendants were violating the Florida Civil Remedies For Criminal Practices Act.

WHEREFORE, Leonard Anthony Settles II prays for judgment:

(a) awarding treble damages, litigation costs, and reasonable attorney's fees pursuant to Florida Statute 772.104(1); and

(b) granting such other relief as the Court may deem just and proper.

Respectfully Submitted,

_____
Justin Seth Drach, Esq.
Trial Counsel for Plaintiff
Leonard Anthony Settles II
Florida Bar No. 103016
Justin Seth Drach, P.A.
5262 Commissioners Drive
Jacksonville, FL 32224
Telephone: (904) 600-4384
Facsimile: (904) 306-1355
justindrach@drachlaw.com